LOUISVILLE & NASHVILLE RD. CO. *v.* RILEY ET AL.,
PARTNERS, D. B. A. FLATOW, RILEY & CO.

(Decided June 20, 1927.)

*Messrs. Freiberg, Avery & Simmonds,* for plain-
tiff in error.

*Messrs. Hightower, O'Brien & Porter,* for defendants in error.

Buchwalter, J. The action was for damages to a carload of bananas, shipped from New Orleans over the Illinois Central and the Louisville & Nashville to Cincinnati. The Louisville & Nashville Railroad Company was the delivering carrier.

The car in question arrived in Cincinnati on Saturday, January 31, 1925, and was placed in the banana shed, maintained by the Louisville & Nashville Railroad Company, early on the morning of February 1, 1925.

Plaintiffs in their petition claimed that the shipment was, upon delivery to the initial carrier, in good, merchantable condition, but, when tendered to plaintiffs, on Monday, February 2, 1925, the same was in a badly damaged and deteriorated condition, and, as a result, plaintiffs claim to have suffered a loss of $365.29, for which they asked judgment.

The defendant, by answer, admits its corporate capacity, and that it is a common carrier; that it made delivery of said carload of bananas to plaintiffs on December 31, 1925, which was later corrected to be January 31, 1925, and denies all further allegations of the petition.

For a second defense, it is alleged that the damage was due, not to any negligence on the part of the defendant, but to the inherent nature of said bananas.

For a third defense, defendant avers it is a common carrier of freight for hire, engaged in interstate commerce; that, at the time of the shipment, there was published and on file with the Interstate

Commerce Commission Agent R. C. Dearborn's Perishable Protective Tariff No. 2, I. C. C. No. 1, which was in full force and effect, by the terms of which tariff it was provided that the shipper of bananas could provide a caretaker, who would be hauled free of charge to and from by the defendant company, and who would take charge of the protective service to be furnished to said bananas. Or said shipper could in turn have a series of agents or caretakers, charged with the duty of furnishing protection to said bananas.

It is further alleged that the railroad company assumed no responsibility with reference to the protection of said bananas; said tariff being in part as follows:

"All such protective service to be furnished to bananas * * * in transit will be governed by shipper's instructions on the billing, subject to contrary instructions from caretaker in charge, and the caretaker's instructions when he abandons the car shall be given by him in writing, and attached securely to the waybill to accompany the car to ultimate destination. In the absence of a caretaker in charge of car, or if caretaker abandons car without giving necessary instructions, the shipment shall be subject to such changed instructions as may be given by the owner."

Defendant further alleges that no instructions relative to protective service for said shipment were given to the carriers; that, pursuant to the tariff, the shipper elected to arrange for the protective service by messenger. The bill of lading provided thereon as follows:

"Ventilation or icing instructions be arranged by

messenger when in charge or on special instructions.''

Defendant further alleges that the messenger did arrange all the ventilation; that no special instructions were received by the carrier; that the bananas arrived in Cincinnati Sunday, January 31, 1925, in good condition, and were, at the request of plaintiffs, placed in the banana shed furnished, without charge, by the defendant company; and, further, that at Latonia a messenger arranged the vents, and shortly thereafter the shipment was delivered to Cincinnati, and consignee notified; that, on Sunday morning, February 1, 1925, the car was taken possession of by one Buzek, agent of the plaintiffs; that at that time said shipment was in good condition; and that, if damage resulted, it was due to the improper management of said Buzek, and not to any act on the part of the defendant, as no protective directions were given to the defendant, and the defendant did nothing with reference to the ventilation of said car further than to maintain proper temperature in the banana shed.

To this answer a reply was filed by the plaintiffs, denying generally the allegations of the answer.

Plaintiffs did not file an amended reply, but admitted in open court that the shipment was made under the tariff rule set forth in the answer. The shipment was made under the uniform straight bill of lading, which provided on its face:

''Ventilation or icing instructions be arranged by messenger when in charge or on special instructions. Import freight ex S. S. Cartago.''

It is admitted that no special instructions were given to the railroad as to ventilation.

The amount is not in dispute; it being agreed that, if the defendant company is liable in damages, the proper measure would be the amount prayed for in the petition. Nor is there any question about the bananas arriving in Cincinnati on Saturday, January 31, 1925, and being in good condition when placed in the banana shed. It is also clear from the record that the bananas were, on Monday, February 2, in a damaged condition, and that this condition was the result of improper ventilation of said car. It is not claimed, nor is there any evidence in the record, that the damage or deterioration was the result of any excess temperature in the banana shed.

The car was last inspected en route by a messenger at Latonia, Ky., who took the temperature of the car, and arranged the vents, at 6:45 p. m., Saturday, January 31, at Latonia.

Upon notice to the plaintiffs, Harold W. Buzek, representing Flatow, Riley & Co., examined the car on Sunday morning about 7:00 a. m. He took the temperature, and opened certain vents and plugs.

The evidence also discloses that, when bananas are exposed to certain degrees of heat, they ripen rapidly, and this ripening process raises the temperature in a car, and if the temperature goes over 70 degrees, the bananas are likely to deteriorate through what is called cooking.

Testimony was introduced by the plaintiffs tending to show that, although the vents were opened by the messenger at Latonia, they were found closed by said Buzek on Sunday morning; that he opened them, and on Monday morning they were again found closed.

There is testimony offered by the defendant that

they were open on Sunday morning, and that they were fully opened on Monday morning before an attempt was made to unload the car.

There was further testimony that the car was not properly ventilated on Sunday, because the temperature was rising and the bananas were ripening, and for that reason generating additional heat, and that the car should have been given a considerably greater amount of ventilation than was given.

The jury returned a verdict for the amount asked for in the petition. Judgment was entered on the verdict, and error is now prosecuted to this court, seeking a reversal of the judgment, the grounds of error being that the verdict is manifestly against the weight of the evidence; that it is not supported by sufficient evidence; and that there was error in the charge of the court.

Another question raised also was as to whether or not the bananas were, on Monday morning, at the time the car was opened for unloading, still in transit; that time being within the forty-eight hours known as "free time."

Bananas are very perishable, and their carriage is covered by special tariffs. These bananas were found at 7:15 on Monday morning in a damaged condition. The car was then partially unloaded, and at 11 o'clock on said day, when an investigation was made to determine the condition of the merchandise, it was claimed that the vents were again found closed. This is of little importance, as the damage was already noted when the car was opened for unloading.

The evidence is undisputed that there were a number of other cars in the banana shed during the time

in question, and that none of these were damaged or injured.

As has been stated, some testimony was offered to the effect that the vents were closed by others than the plaintiffs, in that they were closed between the time they were opened at Latonia, Ky., and the time when the car was examined on Sunday morning by Buzek; and also that they were found closed again on Monday morning.

It is contended by defendants in error that, because of this testimony, the cause was properly submitted to the jury, and that the court was therefore not in error in overruling the motion to direct a verdict for plaintiff in error.

The evidence is undisputed that the bananas deteriorated between the time they were placed in the banana shed (or the time they were inspected by Buzek, on Sunday morning), and the time the car was opened for unloading on Monday morning. This period was within the forty-eight hours free time for unloading, and before the plaintiffs actually began to unload the car. We consider that during this time the duty owed by the railroad company was the same as if the shipment was still in transit. Access had been given to the plaintiffs to unload. It was then Sunday morning. Plaintiffs waited until Monday morning to unload the car. This holding that the same duties and obligations rested upon the carrier as if the goods were in transit is under the rule pronounced in *Michigan Central Rd. Co.* v. *Mark Owen & Co.*, 256 U. S., 427, paragraph 1 of the syllabus, 41 S. Ct., 554, 65 L. Ed., 1032:

"Under a 'uniform' interstate bill of lading providing that property not removed, by the party

entitled to receive it, within forty-eight hours after the notice of its arrival, may be kept in car, depot or place of delivery of the carrier, subject to a reasonable charge for storage and to the carrier's responsibility as warehouseman only, or may, at the carrier's option, be stored in a public or licensed warehouse at the owner's cost and risk, subject to a lien for the carrier's freight and other charges, the carrier remains liable *qua* carrier during the forty-eight-hour period, pending delivery.''

The bill of lading herein, being the uniform straight bill of lading, provides that the free time shall be such as allowed by tariffs lawfully on file. It is conceded that this free time, under the tariffs in question, was forty-eight hours. The bill of lading is a contract, and we have heretofore set forth some of the conditions of this contract; one being that the ventilation was to be taken care of by, and controlled by, the messenger. In the absence of special instructions, no duty as to ventilation devolved upon the railroad company. In fact, under the contract, the railroad company could not interfere with the ventilation of said car, and, as the only cause given for the deterioration of the bananas was lack of, or improper, ventilation during the time mentioned, the railroad company has not been shown to have breached any duty owed by it. The duty, under the contract, rested on the shipper, or, later, the consignee, to attend to ventilation. While a carrier is responsible for the safe carriage of the goods, that only means when such carrier has exclusive possession and control thereof, and, when the shipper, by express stipulation, undertakes to ventilate the car, by its messenger or agent, the carrier is

relieved of all responsibility as to ventilation, unless it be shown that an agent or employee of said carrier committed some overt act, causing damage to the shipment. Had the loss or damage been occasioned by any cause other than the improper ventilation, the burden of proof would have been on the carrier.

In view of the above state of the record, we consider that the court was in error in overruling the motion to direct a verdict for the defendant. This disposes also of any question as to the weight of the evidence.

Special charge No. 2, offered by the plaintiffs, and given by the court, over objection and exception of the defendant company, is as follows:

"I charge you as a matter of law the defendant is liable for any act of omission or commission of any person other than the plaintiff's agent, where such acts of omission or commission directly contributed to the damage while said car was stationed in the banana shed of the defendant company."

This charge is erroneous. The defendant company did not ventilate the car, nor was it chargeable, under the express conditions of the bill of lading, with the ventilation of the car, and the only cause given for deterioration of the bananas was lack of proper ventilation. To charge defendant with acts of omission with reference to ventilation, which was the only cause of the damage, is not only improper, but prejudicial, as there was no duty devolving upon the company in that respect.

Our conclusion, therefore, is that the motion to direct a verdict should have been granted, and the court will render the judgment that should have

been entered in the Court of Common Pleas, to wit, judgment for the defendant.

*Judgment for plaintiff in error.*

HAMILTON, P. J., and CUSHING, J., concur.